## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**HARRY WILLIAM LOTT,**
      **Plaintiff,**

                                       **Case No. 2:13-cv-00377**
     **v.**                                 **JUDGE EDMUND A. SARGUS, JR.**
                                       **Magistrate Judge Norah McCann King**

**MARIETTA MUNICIPAL COURT,**
**et al.,**
            **Defendants.**

### OPINION AND ORDER

Plaintiff Harry William Lott ("Mr. Lott" or "Plaintiff") brings this action against a group of government Defendants. They include: (1) the Marietta Municipal Court ("the MMC"), (2) the Fourth District Court of Appeals ("the Fourth District"), (3) Belpre, Ohio prosecutor Andrew S. Webster ("Mr. Webster"), (4) the United States Attorney's Office for the Southern District of Ohio ("the U.S. Attorney's Office"), and (5) the United States Department of Justice ("DOJ"). He alleges a number of constitutional violations, including violations of his right to procedural due process, and of his Seventh Amendment right to a trial by jury. This matter is before the Court for consideration of several pending motions. For the reasons below, the Court **ORDERS**:

- Mr. Lott's motion for default judgment, doc. 11, is **DENIED**;

- The following motions to dismiss are **GRANTED**—(1) the U.S. Attorney's Office and DOJ, doc. 12; (2) the MMC, doc. 14; (3) and the Fourth District, doc. 16;

- Mr. Lott is **DIRECTED** to **SHOW CAUSE WITHIN FOURTEEN (14) DAYS** why his claims against Mr. Webster should not be dismissed for lack of prosecution based on his failure to serve Mr. Webster successfully.

- The following motions are **DENIED as moot**—(1) Mr. Lott's motion for summary judgment, doc. 11; (2) his subsequent motion for summary judgment, doc. 20; and (3) his motion for a hearing on the pending motions, doc. 25.

## I. BACKGROUND

Plaintiff Harry William Lott proceeds without the assistance of counsel and brings this action under section 1983. His suit stems from a speeding ticket. According to his complaint, Mr. Lott "was charged with a speeding violation and his court date was scheduled on 11/05/2012." Doc. 4 ¶ 1, at 1. He alleges that he then "sent in his answer to the allegation along with depositions over the incident." *Id.* ¶ 2, at 1. Mr. Lott then alleges that Judge Janet D. Welch denied his request for a jury trial in the Marietta Municipal Court for his speeding charge. *See id.* ¶ 4, at 1.

Based on these allegations, Mr. Lott filed suit in this Court in April of 2013. Doc. 1. He submitted an amended complaint a week later. Doc. 4. With it, and based on the allegations laid out above, he asserts the following claims: (1) a general violation of his right to procedural due process, *id.* ¶ 1, at 2; (2) an additional violation of his right to due process "by the Marietta Municipal Court for not giving a notice for no jury trial," *id.* ¶ 2, at 2; (3) a violation of his right to a trial by jury under the Ohio Constitution, *id.* ¶ 3, at 2; (4) an additional violation of his rights "by the Marietta Municipal Court for failing to take legal principles under consideration," *id.* ¶ 4, at 2; (5) another violation of his rights "by the Belpre prosecutor not complying and not wanting to answer deposition [sic] by the way of Motion to Quash notice of deposition . . . which led to prejudice in the court house," *id.* ¶ 5, at 2; (6) a procedural due process violation by the MMC and the Fourth District Court of Appeals for "not following the Seventh Amendment," *id.* ¶ 6, at 2; (7) a violation of his Seventh Amendment right to a jury trial, *id.* ¶¶ 8–9, at 2; and (8) a claim of retaliation based on the exercise of his First Amendment rights, *see id.* ¶ 10, at 2.

Several motions are now ripe for consideration. Mr. Lott moves for summary judgment and for default judgment against each Defendant. Doc. 11 (simultaneous motion for summary

judgment and default judgment); doc. 20 (motion for summary judgment). The U.S. Attorney's Office for this district and DOJ move to dismiss this action. Doc. 12. The MMC, doc. 14, and the Fourth District, doc. 16, have done the same. Finally, Mr. Lott has moved for a hearing on all of the pending motions. Doc. 25.

## II. DISCUSSION

### A. The Motion for Default

Mr. Lott moves the Court for both default judgment and summary judgment. As for default, his motion applies to all of the named Defendants. But because Mr. Lott has not complied with the proper default sequence under the Federal Rules of Civil Procedure, his motion is denied.

According to the Rules, a party seeking default must follow a set sequence. A plaintiff must first move for the Clerk to enter default pursuant to Rule 55(a) before a court can determine whether to grant a motion for default judgment. *See O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 352 (6th Cir. 2003) ("[I]t is important to distinguish between an entry of default and a default judgment."); *id.* ("Rule 55 permits *the clerk* to enter a default when a party fails to defend an action as required. *The court may then* enter a default judgment." (emphasis added)); *Brantley v. Runyon*, No. C-1-96-842, 1997 WL 373739, at *1 (S.D. Ohio June 19, 1997) ("In order to obtain a default judgment under Rule 55(b)(2), there must first be an entry of default as provided by Rule 55(a)."). Mr. Lott has failed in this case to comply with the proper steps for securing default. The docket indicates that he did not first obtain an entry of default according to Rule 55(a). By further asking for a default judgment—without a prior entry of default—Mr. Lott asks the court to act out of turn with the Federal Rules of Civil Procedure. *See Hornell*, 340 F.3d at 352. Accordingly, his motion for default is denied.

## B. The Motions to Dismiss

### 1. Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Generally, an action will be dismissed pursuant to Rule 12(b)(6) "if on the face of the complaint there is an insurmountable bar to relief." *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 690 (S.D. Ohio 2012). An example includes the situation where "there is no law to support the claims made." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, No. 2:12-CV-0299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). Another example is the failure to allege facts in a sufficient manner according to Rule 8(a)(2). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*). The Supreme Court has laid out a "two-pronged approach" for determining facial plausibility. *Iqbal*, 556 U.S. at 679. First— "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Second—focus on the remaining "well-pleaded factual allegations" to "determine whether they plausibly give rise to an entitlement to relief." *Id.*

As an additional note applicable to this case, a *pro se* litigant's pleadings are to be construed liberally and have been held to less stringent standards than formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Even so, *pro se* plaintiffs must still comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *see also Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("Neither [the

4

Supreme Court in *Haines v. Kerner*] nor other courts, however, have been willing to abrogate basic pleading essentials in *pro se* suits.").

### 2. DOJ and the U.S. Attorney's Office

DOJ and the U.S. Attorney's Office move for dismissal for failure to state a claim under Rule 12(b)(6). As they see it, Mr. Lott makes no claims against them; Mr. Lott does not respond to this argument in any of the documents he has filed.

DOJ and the U.S. Attorney's Office are correct—Mr. Lott's complaint does not allege any fact that applies to them. Even construing Mr. Lott's pleading liberally, he "allege[s] no facts that allow a reasonable inference that" DOJ and the U.S. Attorney's Office committed any violation of law against Mr. Lott, meaning he has "thus failed to state a claim." *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 329 (6th Cir. 2013). In short, because DOJ and the U.S. Attorney's Office have no involvement in this suit even according to Mr. Lott's own pleadings; because none of the claims or facts applies to them; and because Mr. Lott thus fails to state a claim against them, their motion to dismiss is granted.

### 2. The MMC

The MMC makes two arguments for dismissal. One relates to the failure to state a claim under Rule 12(b)(6), the other to immunity. Because it bears in part on jurisdiction, the Court deals first with its immunity-related argument.

The MMC argues that, as a municipal court, Ohio Revised Code § 2744.01(F) provides shelter from suit. The Court disagrees. This statute exists as part of the Political Subdivision Tort Liability Act, which "granted sovereign immunity to political subdivisions," save for a few exceptions not at issue here. *Theobald v. Bd. of Cnty. Comm'rs*, 332 F.3d 414, 416 (6th Cir. 2003); *see* Ohio Rev. Code § 2744.02 (titled "Political subdivision not liable for injury, death, or

loss; exceptions"). But, according to the terms of the statute, the MMC does not qualify as a "political subdivision." *See* Ohio Rev. Code § 2744.01(F) ("'Political subdivision' or 'subdivision' means a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state."); *see also Phelps v. Coy*, 164 F. Supp. 2d 961, 976 (S.D. Ohio 2000) ("Moreover, a municipal court is a creature of the state rather than the municipality in which it is located."). Even if it did, Mr. Lott asserts constitutional claims under section 1983. To this end, Ohio's immunity statute "does not apply to . . . [c]ivil claims based upon alleged violations of the constitution or statutes of the United States." Ohio Rev. Code § 2744.09.

Instead, the Court turns to the issue of sovereign immunity. Although the MMC does not raise it, sovereign immunity bears on whether courts even has jurisdiction to deal with the claims before them. Courts may therefore examine sovereign immunity—a jurisdictional matter—*sua sponte*. *Cady v. Arenac Cnty.*, 574 F.3d 334, 345 (6th Cir. 2009); *see also Wilkins ex rel. U.S. v. Ohio*, 885 F. Supp. 1055, 1067 (S.D. Ohio 1995).

The Eleventh Amendment provides sovereign immunity for states from certain lawsuits. It reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has held that this language forbids private lawsuits by citizens against their own state. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). For the purposes of this suit, "[sovereign] immunity is far reaching," in that it "bars all suits, whether for injunctive, declaratory or monetary relief." *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993); *see also Alabama v. Pugh*, 438 U.S. 781, 782

(1977). Further, this immunity applies not just to suits against a "State," but also those against "one of its agencies or departments." *Pennhurst*, 465 U.S. at 100.

The question in this case is whether the MMC qualifies as a "state agency" or "state department." This circuit and courts within it have routinely held that municipal-level courts in Ohio qualify as arms of the state, meaning they are immune from suits brought by citizens of Ohio. *See, e.g., S.J. v. Hamilton Cnty., Ohio*, 374 F.3d 416, 421 (6th Cir. 2004) ("To the extent that considerations of dignity are relevant in determining whether an entity is protected by state sovereign immunity, one would expect this factor to weigh heavily in a suit against a state court."); *Meyers v. Franklin Cnty. Ct. Com. Pl.*, 81 F. App'x 49, at 56 (6th Cir. 2003) ("Therefore, to the extent that the Meyers attempt to claim monetary damages against the Juvenile Court defendants in their official capacities, their claim cannot succeed."); *Mumford v. Basinski*, 105 F.3d 264, 269 (6th Cir. 1997) ("Consequently, an Ohio common pleas court is not a segment of county government, but an arm of the state for purposes of section 1983 liability and Eleventh Amendment immunity analyses."); *Tanner v. Muskingum Cnty. Ct. Com. Pl.*, No. 2:07-CV-711, 2008 WL 114359, at *1 (S.D. Ohio Jan. 9, 2008) (Muskingum County Court of Common Pleas immune from suit); *Central Ohio Alternate Program v. Ballinger*, No. 3:06-CV-01083, 2007 WL 846506, at *4 (N.D. Ohio Mar. 20, 2007) (Marion Municipal Court entitled to Eleventh Amendment immunity).[1] Applied here, the law of sovereign immunity bars Mr. Lott's suit against the MMC.

---

[1] The Sixth Circuit has expressed some doubt about the "continued validity" of holding Ohio courts immune from suit on the basis of sovereign immunity. *Triplett*, 109 F. App'x at 96 n.4; *see S.J.* 374 F.3d at 421–24 (expressing doubt about whether an Ohio county court would qualify for sovereign immunity, given that it was unclear whether the state of Ohio would be responsible for paying a monetary judgment against the court). Despite this doubt, *Mumford* remains the controlling case for whether sovereign immunity prevents suit against an Ohio court. *See Tanner*, 2008 WL 114359, at *1 ("The United States Court of Appeals for the Sixth Circuit has, on at least two occasions since *Alkire*, reaffirmed the holding in *Mumford* that an Ohio Court of Common Pleas is an arm of the state entitled to Eleventh Amendment immunity from suit in federal court."). And according to *Mumford*, Ohio municipal courts are "components of the state government" and thus "insulated from private federal court

Although exceptions to sovereign immunity exist, none of them applies to this case. As one exception, the Eleventh Amendment does allow a suit for injunctive relief against a state official. *Ex Parte Young*, 209 U.S. 123, 167 (1908). But Mr. Lott has only sued the MMC, not any officials of that court. As another, a state could waive sovereign immunity by consenting to a suit in federal court. *See, e.g.*, *Green v. Mansour*, 474 U.S. 64, 68 (1985). That has not happened here—the State must do so "by the most express language," *Edelman v. Jordan*, 415 U.S. 651, 673 (1974), and no applicable Ohio statute meets that bar, *see Ohio v. Madeline Marie Nursing Homes No. 1 & No. 2*, 694 F.2d 449, 460 (6th Cir. 1982) ("[T]he Ohio Court of Claims Act amounted to a waiver of sovereign immunity only for claims which were themselves determined in the Ohio Court of Claims, but acted as no waiver for actions brought in a federal court"). As a final option, Congress can abrogate a state's sovereign immunity. *Kimel*, 528 U.S. at 73. But a claim under § 1983 does not do so. *See Quern v. Jordan*, 440 U.S. 332, 339–42 (1979).

In short, the MMC has sovereign immunity from suit according to the Eleventh Amendment, meaning this Court lacks jurisdiction to resolve Mr. Lott's claims against it. For this reason, Mr. Lott's claims against the MMC are dismissed.

---

litigation by the Eleventh Amendment." *Mumford*, 105 F.3d at 268; *see Foster v. Walsh*, 864 F.2d 416 (6th Cir. 1988) (per curiam) ("It cannot seriously be argued that an Ohio municipal court is indistinguishable from the municipal corporation in which it sits. The Akron Municipal Court is part of the Ohio state court system, established by the Ohio state legislature. It is subject to the supervision of the Ohio Supreme Court. The municipal court may not be abolished by the city council, nor may the council expand or restrict the court's jurisdiction." (citations omitted)). Further, the cases that courts have cited as possibly weakening *Mumford* have also, at the same time, strengthened the doctrine of sovereign immunity in the context of state courts. *See, e.g.*, *S.J.*, 374 F.3d at 421 (reaffirming that the sovereign-immunity analysis is about more than the public fisc and whether the state would be responsible for a monetary judgment: "The Supreme Court explained . . . that the sovereign immunity doctrine is about money *and* dignity—it not only protects a State's treasury, but also pervasively . . . emphasizes the integrity retained by each State in our federal system." (internal quotation marks omitted)).

### 3. The Fourth District

The Fourth District advances several arguments to support its motion to dismiss. Because they bear in part on jurisdiction, the Court deals first with its immunity-related arguments. One relates to Federal Rule of Civil Procedure 17(b)—namely that the Fourth District is not *sui juris* and thus cannot be sued; the other argues that sovereign immunity under the Eleventh Amendment cloaks the Fourth District from suit in this Court. Mr. Lott fails to address either argument, and the Court agrees that both lead to the conclusion that it lacks jurisdiction over the Fourth District.

The Court agrees with the Fourth District that it is *sui juris* and thus cannot be sued. Federal Rule of Civil Procedure 17 governs in part whether an entity can be sued in federal district court. The Rule's first two provisions do not expressly identify a "state court" as an entity that can sue or be sued. *See* F. R. Civ. P. 17(b)(1)–(2). Its status as a litigant thus depends on "the law of the state where [this] court is located." *Id.* 17(b)(3). The Ohio Supreme Court has held that, absent statutory authority, Ohio courts are not *sui juris* and thus cannot be sued. *Malone v. Ct. Com. Pl. of Cuyahoga Cnty.*, 45 Ohio St.2d 245, 248, 344 N.E.2d 126 (Ohio 1976); *see also Lawson v. City of Youngstown*, 912 F. Supp. 2d 527, 530 (N.D. Ohio 2012) (holding that Youngstown Municipal Court is not *sui juris*); *Williams v. City of Columbus*, 892 F. Supp. 2d 918, 923 (S.D. Ohio 2012); *Yoel v. Gandolf*, No. 1:06-CV-387, 2007 WL 77798, at *5 (N.D. Ohio Mar. 12, 2007) (holding that the Lake County, Ohio Court of Common Pleas cannot sue or be sued in a Section 1983 action). Mr. Lott does not point to any statute that authorizes suit against the Fourth District. This is enough to grant the Fourth District's motion to dismiss.

Even if it were not, this Court also lacks jurisdiction as to Mr. Lott's claims against the Fourth District based on Eleventh Amendment sovereign immunity. The same immunity rules and analysis explained above for the MMC apply here to the Fourth District. *See, e.g., S.J.*, 374 F.3d at 421–22 ("To the extent that considerations of dignity are relevant in determining whether an entity is protected by state sovereign immunity, one would expect this factor to weigh heavily in a suit against a state court. Such courts are the 'adjudicative voice' of the state itself. That is particularly true in the context of a court system that, like Ohio's, is mandated by the state constitution to be uniform and to be supervised by one supreme court. While lower state courts may sometimes be funded by the counties where they sit, separation of powers concerns frequently preclude counties and other branches of government from denying reasonable funding for the operation of the courts." (citations omitted)). Thus, the Court lacks jurisdiction over the claims against the Fourth District.

For the reasons above, the Fourth District's motion to dismiss is thus granted, and the Court declines to deal with the Fourth District's additional arguments for dismissal.

### 4. Conclusion

Each of the moving Defendants raises strong arguments that Mr. Lott's Seventh Amendment claims fail as a matter of law according to Rule 12(b)(6). *See, e.g., Baldwin v. New York*, 399 U.S. 66, 68 (1970) (petty crimes—including those with the possibility of up to six months in prison—do not mandate a trial by jury); *Walters v. Griffith*, 38 Ohio St. 2d 132, 133, 311 N.E.2d 14, 15 (1974) (noting that requiring the party demanding a jury trial to pay the costs of summoning the jurors and the fees of jurors is "a moderate and reasonable regulation of the right of trial by jury," and thus "not a violation of . . . either the Ohio or the United States Constitution"); Ohio Rev. Code § 4511.21(P)(1)(a) (generally categorizing speeding infractions

as "minor misdemeanor[s]"); *id.* § 2929.24 (providing for jail time only for higher level misdemeanors); *id.* § 2945.17(B)(1)–(2) (minor misdemeanors and crimes for which jail is not a possible punishment do not trigger the right to a trial by jury). As to DOJ and the U.S. Attorney's Office, the Court need not reach these arguments—both parties must be dismissed because Mr. Lott fails to allege anything against them outside of listing them as Defendants. As to the MMC and the Fourth District, the Court cannot reach the merits of those 12(b)(6) arguments—it lacks jurisdiction over each for the immunity-related reasons explained above. Accordingly, Mr. Lott's complaint against the moving Defendants—DOJ, the U.S. Attorney, the MMC, and the Fourth District—is dismissed for the reasons stated.

## B. Mr. Webster

Mr. Lott also brings suit against a final Defendant—Belpre, Ohio City Prosecutor Andrew Webster. Mr. Webster has not responded to Mr. Lott's complaint, nor has he submitted a motion in this case. The record reflects that Mr. Lott has not properly served Mr. Webster.

Federal Rule of Civil Procedure largely governs proper service of process for civil litigants. Rule 4(c)(1) places the burden of proper service on the plaintiff—he "is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." And according to the timeline from Rule 4(m), a defendant must be served "within 120 days after the complaint is filed." If not, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice." Fed. R. Civ. P. 4(m). This is because without waiver or proper service of process, the Court lacks personal jurisdiction over a defendant at issue. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991). The plaintiff owns the burden of demonstrating proper service. *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996). These rules of service apply

just the same to *pro se* litigants. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) ("[The plaintiff's] action was not dismissed as the result of inartful pleading or any lack of legal training, but rather because he failed to adhere to readily comprehended court deadlines of which he was well-aware.").

In this case, Mr. Lott filed his *pro se* complaint on April 22, 2013. *See* doc. 1. He had until August 22, 2013 to effect service of process on Mr. Webster. That deadline passed several months ago, and the docket does not indicate that Mr. Lott successfully served Mr. Webster before or since. *See* S.D. Ohio Civ. R. 4.1–4.2. In light of this, the Court **DIRECTS** Mr. Lott to **SHOW CAUSE WITHIN FOURTEEN (14) DAYS** why this case should not be dismissed for lack of prosecution based on his failure to serve Mr. Webster successfully. *See Abel v. Harp*, 122 F. App'x 248, 251 (6th Cir. 2005) ("The plaintiff bears the burden of establishing good cause for the failure."). Mr. Lott is cautioned that failure to answer will result in dismissal of his claims against Mr. Webster.

## C. The Remaining Pending Motions

Three of Mr. Lott's motions remain. They are **DENIED as moot** against the Defendants that have now been dismissed—DOJ and the U.S. Attorney's Office, the MMC, and the Fourth District; and they are **DENIED as moot** against Mr. Webster, as he has not been properly served. *See* doc. 11 (first motion for summary judgment); doc. 20 (second motion for summary judgment); doc. 25 (motion for hearing on the pending motions).

### III. CONCLUSION

For the reasons above, Mr. Lott's motion for default judgment is **DENIED**. Doc. 11. The three motions to dismiss are **GRANTED**—(1) DOJ and U.S. Attorney's Office, doc. 12; (2) the Marietta Municipal Court, doc. 14; (3) and the Fourth District, doc. 16. The Court

**DIRECTS** Mr. Lott to **SHOW CAUSE WITHIN FOURTEEN (14) DAYS** why this case should not be dismissed for lack of prosecution based on his failure to serve Mr. Webster successfully. And the following motions are **DENIED as moot**—(1) Mr. Lott's motion for summary judgment, doc. 11; (2) his subsequent motion for summary judgment, doc. 20; and (3) his motion for a hearing on the pending motions, doc. 25.

    **IT IS SO ORDERED.**


     12-17-2013
_____                    _____
**DATED**                                  EDMUND A. SARGUS, JR.
                                           **UNITED STATES DISTRICT JUDGE**